**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HANNAH TURNBOW, AINSLEY PARISH, MORGAN WIEDERHOLD, ASHLEY RODRIGUEZ & KELLY NEUNER | § § § § § | |
| | § | Civil Action No. _____ |
| *PLAINTIFFS*, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| HOUSTON TEXANS, L.P. D/B/A HOUSTON TEXANS | § § § | |
| *DEFENDANT.* | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

NOW COMES, Hannah Turnbow, Ainsley Parish, Morgan Wiederhold, Ashley Rodriguez, and Kelly Neuner, hereinafter "Plaintiffs" and complain of HOUSTON TEXANS, L.P. D/B/A HOUSTON TEXANS ("Houston Texans"), for causes of action and would show the Court as follows:

## I.      INTRODUCTION

1.      When football returned to Houston in 2002, so too did the beautiful cheerleaders whose bright smiles, perfect figures, and energetic routines fill NRG Stadium with applause and cheers.  But behind the glitz and glamour of being a Houston Texans Cheerleader exists a small group of women who spend hundreds of hours each year, practicing, training, and performing for your game day viewing pleasure. Others, who aren't performing in the game, spend the minutes of each quarter being paraded throughout the stadium, suite to suite, with "safe words" for protection.  "Toro" means more than the Texans mascot.  It means a woman does not feel safe.

2.      In their "off time" this small cadre of athletes spend countless hours doing appearances, further spreading the Houston Texans brand for the team mandated fifty appearances each season.  These appearances earned the Houston Texans a quick thousand dollars or more each and cost the organization almost nothing.



3.      For an even more select few, trips to tropical beaches and locations are promised. After all, the Houston Texans Cheerleaders Swimsuit calendar must be made.  But hours spent traveling to these distant locations is not compensated.  Hotel arrangements were paid by the Texans but the Houston Texans Cheerleaders received no stipend to cover food costs, despite the fact they were expected to stay on-sight for days at a time.  For those Cheerleaders who maintain traditional employment outside of the "part-time" job as a cheerleader, missed time from work is not reimbursed.  Nor did these beautiful women receive any share of the substantial revenues generated by the annual calendar sales.



4.      Being a Houston Texans Cheerleader meant the opportunity to "become a role model, to show women that they can make a career out of a passion." And while the glamour and pride of supporting your "hometown team" is enough to spur a thousand women to tryout each year, life as a Houston Texans Cheerleader is not all what it is represented to be.



5.      "It's a part-time job, with full-time hours," as one former Texans Cheerleader would say—full time hours that earn these teammates the same wages or less than employees at your local McDonald's.   When each hour of the practices, games, appearances, travel time, preparation, and required social media marketing is accounted, the Houston Texans Cheerleaders earn pennies for each hour worked.



6.      Complaints regarding discrepancies in paychecks were ignored and threats of dismissal or consequences for voicing complaints were enough to silence even the staunchest of critics.   But separate and apart from the long, low, and often unpaid hours; the dangerous environment in the stands, where one Plaintiff suffered significant bodily injury at the hands of a fan; and the micro-managed lifestyle with rules and protocols governing even their private lives outside of work, Plaintiffs endured a systemic pattern of disparity—while their beauty and cheers

provided ample entertainment to fans—the Houston Texans Cheerleaders were never treated like the integral part of the team they are.



7.      Today, Hannah T., Ainsley P., Morgan W., Ashley R., and Kelly N. take a stand; a stand for themselves, their colleagues, and all the girls who cheer for pee wee football, with hopes and dreams of being a Houston Texans Cheerleader someday.  Today, Plaintiffs file this action to recover compensation for the countless hours worked but not recorded or paid; for the discriminating failure of the multi-billion dollar Houston Texans franchise to pay a reasonable wage to the women on the team—the women who fill the stands with smiles, who represent the team as Ambassadors throughout the world, and who cheer on your Houston Texans.  Today, these women say "enough" is "enough."  Today, these women come before this Court to hold the Houston Texans and the NFL at large accountable.

8.      Plaintiffs demand a jury trial on all issues that may be tried to a jury.

## II.      JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action involves a federal question under the FLSA.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because Defendant operates in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III.      PARTIES

**Plaintiffs**

11.     Plaintiffs, Hannah Turnbow, Ainsley Parish, Morgan Wiederhold, Ashley Rodriguez and Kelly Neuner are all residents of Harris County, Texas.

12.     At all material times, Plaintiffs were an individual employees for the Defendant within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203 and the Texas Labor Code.

13.     Defendant employed Plaintiffs as cheerleaders for the Houston Texans NFL team.

**Defendant**

14.     Defendant Houston Texans is a Delaware limited partnership doing business in Texas.  It may be served with process through its registered agent Capitol Corporation Services, Inc. at its registered office, 206 E, 9th Street, Suite 1300; Austin, Texas 78701.

15.     At all times relevant hereto Houston Texans was an employer and covered enterprise as those terms are defined in the FLSA and Texas Labor Code.

16.     Coach Altovise Gary, ("Coach Alto"), is an individual and manager of the Houston Texans Cheerleading team.  At all times relevant hereto, Coach Alto was responsible for the day-

6

to-day operations of the Houston Texans Cheerleading team, had operational control over the Houston Texans Cheerleading Team, and participated in decisions related to Plaintiffs' compensation.

## IV.    FACTS

17.    Defendant owns, operates, and/or manages the NFL football team known as the Houston Texans and its supporting team the Houston Texans Cheerleaders. The Houston Texans are in the business of promoting and playing professional football games. The Houston Texans Cheerleaders are vital, integral members of the Houston Texans franchise and team.

18.    Plaintiffs were employed by Defendant as Cheerleaders at various times. During their tenures as Houston Texans Cheerleaders, they were subjected to intense scrutiny, harassment, threats of physical assaults, actual assaults by spectators, and cyberbullying by the coach and her staff. They were also forced to make a number of appearances (including out of state travel), without compensation.

19.    Plaintiffs were required to appear and perform at games, make numerous (over fifty) event performances and appearances, attend numerous meetings, photo shoots and apparel fittings, rehearse at scheduled times, continually monitor, tweet and respond to tweets on a team owned Twitter account daily, attend a cheer camp in Atlanta,  spend multiple hours a week in the gym, get a spray tan before every game and every official Texans event, sign thousands of Houston Texans calendars, and required to get their hair and nails done at a specific salon, all the while not being compensated for all of the time spent completing these tasks.

20.    Pursuant to their written contract, Defendant was to pay Plaintiffs $7.25 for each hour spent providing services as a Houston Texans Cheerleader, including those services listed above.  Defendant failed to compensate Plaintiffs for many of those hours.

21.     In fulfilling their duties as a Houston Texans employee, Plaintiffs continually worked overtime hours in excess of a 40-hour work week, but were not paid the requisite time and a half for the overtime hours as required by the FLSA.

22.     Naturally, fitness and appearance were important.   However the manner and method in which the Houston Texans insured its cheerleaders maintained their physique was hostile and fell nothing short of body-shaming.   Houston Texans Cheerleaders were regularly measured; forced to wear multiple pairs of pantyhose because of cellulite.   Alto would inspect the team, often after a workout.   After one practice, Alto remarked, "I see a lot of jiggle jiggle."

23.     Alto assaulted one cheerleader by taking duct tape and physically taped down her sides under her uniform.   She proceeded to dangle the duct tape in front of the team, including Plaintiffs, during a game, threatening them that 'they were next'.   Plaintiffs were in a constant state of fear around Alto, anxiously anticipating whether they would be the next one subjected to her physical assaults.

24.     Defendant further took advantage of Plaintiffs by continually using their names and likeness for Defendant's own financial gains, while failing to compensate or provide any consideration to Plaintiffs' for same, including using their likeness (and requiring them to appear to sign autographs) for the Texans Cheerleaders calendar.

25.     On a daily basis, repeatedly and for the entire time of their tenure, Plaintiffs were subjected to tweets, emails and other electronic communications from Alto and/or her staff (acting at her direction) intended solely for the purpose of harassing, abusing, tormenting and offending Plaintiffs and to beat them down into a submissive state.   This cyberbullying was pervasive and hostile.   Not only were Plaintiffs required to be subjected to such cyber harassment, but they were

also contractually required to continually monitor and respond to messages sent on Twitter and email in a 'timely fashion' and were not compensated for their time in doing so.

26.      Plaintiffs were further subjected to being physically assaulted by spectators, "fans" and other non-employees on an ongoing basis, without adequate security or protection for same. Defendant knew the risk of harm to Plaintiffs was great.   When one Plaintiff was physically assaulted at a game, she immediately reported the incident to her supervisor and to Alto, who did nothing in response but told her to 'deal with it and move on', even though she had visible physical injuries from the assault and was so shaken up she was crying from the experience, the assault and the aftermath.  Defendant did nothing to protect her or any other Plaintiffs and further did nothing to the individual who assaulted her.

27.      Defendant Houston Texans were well aware of the ongoing issues surrounding the conditions Plaintiffs were being forced to work under, yet they swept it under the rug and failed to address the problem.   Upon information and belief, the Houston Texans were provided ample information as far back as 2011 and 2012 about the abuses and harassment the Houston Texans Cheerleaders suffered; but the Texans failed to take action to remedy those abuses.

28.      For Plaintiffs, being a Houston Texans cheerleader "was about being a part of something bigger than" one individual, "it was about playing a huge role in the community, while doing what [they] love."  Most of the Houston Texans Cheerleaders had been in dance and cheer since they were children.  But being a dancer, cheerleaders, and entertainer was not enough.  After a long day of work and practice, Plaintiffs were regularly bullied and pressured to complete mandated social media marketing—from tweeting and posting on Instagram to preparing videos and snippets of "life as a Houston Texans Cheerleader," social media marketing required a substantial investment of time none of which was compensated.

29.     Not only did the Houston Texans micro-manage Plaintiffs online presence, Defendant further established rules and protocols applicable only to the Houston Texans Cheerleaders detailing what the team wears; how they wear their hair, including where to have their hair cut and styled; what the Cheerleaders are allowed to post online and who they may follow on personal social media; and who they are allowed to hang out with outside of work.  One such rule prohibited the Houston Texans Cheerleaders to speak to the players at work.  Just looking at a player could result in a reprimand.  Defendant dictated what Plaintiffs were allowed to do for work and activities to further their careers and any lines crossed outside of this part time job were always noted.  Team members "paid for their mistakes."

30.     The staff of the Houston Texans Cheerleaders created a hostile and unfair workplace. They instilled fear into Plaintiffs and many of their teammates. Plaintiffs were often reminded they were "replaceable" reprimanded for speaking up or raising any complaints. Defendant's staff member told teammates that if one Plaintiff tried to return the following year she "wouldn't make it back because [she] questions coach Alto too much."  Plaintiffs were often reminded to just "say yes ma'am."

31.     This system pattern of behavior and disparity must end.  No longer will Plaintiffs merely say "yes ma'am" as Houston Texans football players are held to lesser standards and higher pay.  No longer will Plaintiffs sit by as they and their teammates live in fear, not only of physical harm and retribution, but that one slip, one failure to tweet, may blacklist them in their future endeavors.

32.     The discrimination is obvious.  All the Cheerleaders are women.  While male teammates earn millions, these women are exploited, earning about ten cents a minute.

## V.     **FIRST CLAIM FOR RELIEF**

### *Failure to Compensate For Work Performed*

33.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

34.     Plaintiffs are considered non-exempt employees under the statutory provisions of the FLSA as well as by the administrative regulations used to interpret it.

35.     Defendant failed to compensate Plaintiffs their entitled pay for all hours they worked in a workweek.

36.     Defendant has failed to make a good faith effort to comply with the FLSA, and have willfully and deliberately sough to evade the requirements of the federal statute.

37.     Defendant has failed to maintain a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Plaintiffs as required by law.

38.     The Defendant's conduct was willful within the meaning of 29 U.S.C. § 255(a).

39.     No lawful exemption excused the Defendant from compensating Plaintiffs for hours worked, but not recorded or paid in a workweek.

40.     Defendant knowingly, willfully, or with reckless disregard carried out an illegal pattern and practice of deceptive and fraudulent accounting practices regarding compensation due to Plaintiffs for hours worked, but not recorded or paid.

41.     Plaintiffs seek an amount of back-pay equal to the unpaid compensation for hours worked, but not recorded or paid, from the date they commenced employment for the Defendant until the date of trial.

11

42.     Plaintiffs further seek an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs as provided by 29 U.S.C. § 216(b), along with pre-judgment and post-judgment interest at the highest rate allowed by law.

## VI.     SECOND CLAIM FOR RELIEF

### *Failure to Pay Minimum Wage*

43.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

44.     Plaintiffs are considered non-exempt employees under the statutory provisions of the FLSA as well as by the administrative regulations used to interpret it.

45.     Defendant failed to compensate Plaintiffs at least $7.25 an hour.

46.     Defendant has failed to make a good faith effort to comply with the FLSA's minimum wage requirement, and have willfully and deliberately sought to evade the requirements of the federal statute.

47.     Defendant has failed to maintain a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Plaintiffs as required by law.

48.     The Defendant's conduct was willful within the meaning of 29 U.S.C. § 255(a).

49.     No lawful exemption excused the Defendant from compensating Plaintiffs the minimum wage.

50.     Plaintiffs seek and amount of back-pay equal to the unpaid compensation for hours worked, in which minimum was wage not paid, from the date they commenced employment for the Defendant until the date of trial.

51.     Plaintiffs further seek an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs as provided by 29 U.S.C. § 216(b), along with pre-judgment and post-judgment interest at the highest rate allowed by law.

## VII.     THIRD CLAIM FOR RELIEF

### *Unpaid Overtime Compensation Under The FLSA*

52.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

53.     Plaintiffs are considered non-exempt employees under the statutory provisions of the FLSA as well as by the administrative regulations used to interpret the Act.

54.     Plaintiffs are entitled to receive overtime pay for all hours they have worked in excess of 40 during each seven-day workweek.

55.     Defendant failed to compensate Plaintiffs their entitled pay (including overtime pay) for those hours they worked in excess of 40 per week.

56.     Defendant has violated the FLSA by failing to compensate the Plaintiffs overtime pay for all hours worked in excess of 40 hours per week.

57.     Defendant has failed to make a good faith effort to comply with the FLSA, and have willfully and deliberately sought to evade the requirements of the federal statute.

58.     Defendant has failed to maintain a complete, accurate, and contemporaneous record of the number of hours worked per workweek by Plaintiffs as required by law.

59.     The Defendant's conduct was willful within the meaning of 29 U.S.C. § 255(a).

60.     No lawful exemption excused the Defendant from compensating Plaintiffs overtime pay for hours worked over forty per week.

61.     Plaintiff seeks an amount of back-pay equal to the unpaid overtime compensation from the date they commenced employment for the Defendant until the date of trial.

62.     Plaintiffs further seek an additional equal amount as liquidated damages, as well as reasonable attorney's fees and costs as provided by 29 U.S.C. § 216(b), along with pre-judgment and post-judgment interest at the highest rate allowed by law.

## VIII.   FOURTH CLAIM FOR RELIEF

### *Assault by Threat of Bodily Injury*

63.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

64.     Alto acted intentionally or knowingly when she made threats of imminent bodily harm to Plaintiffs and others.

65.     In addition to duress and anxiety arising from Alto's threats of imminent bodily harm, Plaintiffs also became apprehensive and fearful and suffered injuries as a result.

## IX.   FIFTH CLAIM FOR RELIEF

### *Appropriation of Likeness*

66.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

67.     Defendant the Houston Texans appropriated Plaintiffs' names and likeness for value associated with their names and likenesses.

68.     Plaintiffs can be easily identified from the publications made by Defendant.

69.     Defendant, the Houston Texans received a benefit and monetary value from the appropriation of Plaintiffs' likenesses, without adequate compensation to Plaintiffs.

70.     Plaintiffs have suffered injuries as a result of Defendant's appropriation, including mental anguish and economic injuries.

71.     Plaintiffs seek exemplary damages as a result of Defendant's appropriation.

## X.     SIXTH CLAIM FOR RELIEF

### *Violation of Penal Code § 42.07(a)(7)*
### *Negligence Per Se*

72.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein

73.     Plaintiffs belong to the class of persons Texas Penal Code § 42.07(a)(7) was designed to protect, and their injuries are of the type the statute was designed to prevent.

74.     Texas Penal Code § 42.07(a)(7) is a statute wherein tort liability may be imposed when violated.

75.     Defendant's employees repeatedly violated Texas Penal Code §. 42.07(a)(7) over the course of several years, without adequate excuse to do so.

76.     Defendant's outrageous acts in violation of Texas Penal Code §. 42.07(a)(7) proximately caused Plaintiffs' injuries.

77.     Defendant is vicariously liable to Plaintiffs' as a result of Alto's repeated violation of Texas Penal Code § 42.07(a)(7).

## XI.     SEVENTH CLAIM FOR RELIEF

### *Negligent Hiring and Negligent Retention*

78.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

79.     Defendant Texans owed Plaintiffs a legal duty to hire, supervise, train and retain competent employees.

15

80.     Defendant Texans breached these duties to Plaintiffs when it hired Alto, failed to train Alto, failed to properly supervise Alto, and Alto after having express knowledge of Alto's behavior, including criminal behavior, directed towards Plaintiffs.

81.     Defendant's breach of its duties proximately caused Plaintiffs to suffer injuries.

## XII.     EIGHTH CLAIM FOR RELIEF

### *Intentional Infliction of Emotional Distress*

82.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

83.     Defendant the Houston Texans acted intentionally or recklessly as more fully described herein, *supra.*

84.     Plaintiffs suffered severe emotional distress as a direct result of Defendant's conduct.

85.     Defendant's conduct was both extreme and outrageous.

86.     Defendant's conduct proximately caused Plaintiffs' emotional distress.

87.     Pleading in the alternative, Plaintiffs have no alternative cause of action that would provide a remedy for the severe emotional distress caused by Defendant's conduct.

## XIII.     NINTH CLAIM FOR RELIEF

### *Breach of Contract*

88.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

89.     Plaintiffs and Defendant entered into a valid, enforceable contract, wherein Defendant agreed to pay Plaintiffs the federal minimum wage for each hour spent providing services as a Houston Texans Cheerleader.  These services are defined, without limitation, in the

contract to include performing at or attending games, making event performances or appearances, attending meetings, photo shoots, apparel fittings, rehearsals, and using club owned Twitter accounts as instructed. Plaintiffs were also to be paid compensation for overnight stays relating to events and performances, reimbursed expenses and mileage, and provided apparel and equipment to perform their jobs.

90.   Plaintiffs each performed all of their contractual obligations under the contract.

91.   Defendant has breached the contract by failing to pay Plaintiffs for all services provided and required of them.

92.   Defendant's breach has caused Plaintiffs to suffer injuries, including economic damages.

### XIV.   <u>TENTH CLAIM FOR RELIEF</u>

#### *Negligence*

93.   Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

94.   Defendant owed a legal duty to Plaintiffs to provide adequate security and a safe working environment. Defendant had actual knowledge of the potential danger Plaintiffs could be subjected to at any given time.

95.   Defendant breached its legal duty to Plaintiffs by failing to provide them adequate security, failing to provide a safe working environment and failing to remedy harmful and dangerous situations of which they were aware.

96.   Defendant's breach proximately caused Plaintiffs injury, including physical harm, and mental anguish.

## XIV.  ELEVENTH CLAIM FOR RELIEF—HANNAH TURNBOW

*Discrimination and/or Harassment in Violation of*
*Title VII of the Civil Rights Act of 1964 as amended*

97.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully written herein.

98.     This claim is an action for gender discrimination pursuant to 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964) as amended by the Civil Rights Act of 1991.

99.     Defendant is an "employer" engaged in an industry affected commerce as defined by 42 U.S.C. § 2000e (b).

100.    Hannah Turnbow is in the process of instituting and completing the complaint and investigation process with the Equal Employment Opportunity Commission.

101.    Turnbow, a female, has been the subject of a disparate and hostile work environment on the basis of her sex.

102.    Defendant engaged, openly, in intentional gender discrimination in the terms and conditions of Plaintiff Turnbow's employment.

103.    Defendant's discriminatory conduct, in violation of Title VII, has caused the Plaintiff Turnbow to suffer a loss of pay, benefits, and prestige.

104.    Defendant's actions have caused Plaintiff Turnbow to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

105.    Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

18

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon hearing, the Court grant Plaintiffs relief as follows:

a. Declare that Defendant has violated the Fair Labor Standards Act, specifically, 29 U.S.C. § 207, by failing to pay Plaintiffs overtime pay at one and one-half times their regular hourly rate for all hours in excess of 40 worked during each seven-day work period, and by failing to compensate employees for work performed, but not recorded or paid;

b. Order Defendant to pay Plaintiffs the difference between what they should have paid for overtime hours Plaintiffs worked during the relevant period and what they were actually paid, as well as compensation for hours worked but not recorded or paid, together with an equal amount as to liquidated damages.

c. Order Defendant to pay Plaintiffs reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

d. Order Defendant to pay pre-judgment and post-judgment interest at the highest lawful rate for all amounts, including attorneys' fees, awarded against Defendant.

e. Plaintiffs' actual, compensatory damages incurred as a result of Defendant's tortious conduct detailed herein.

f. Plaintiff Hannah Turnbow asks that this Court grant Plaintiff: (1) compensatory damages for the humiliation, emotional distress, and other damages caused by Defendant's conduct;  (2) punitive damages for Defendant's malicious and recklessly indifferent conduct; (3) all employment benefits she would have enjoyed had she not been discriminated and retaliated against; and (4) all expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988;

g. Order further relief, whether legal, equitable, or injunctive, as may be necessitated to effectuate full relief to all Plaintiffs.

Plaintiffs Hannah Turnbow, Ainsley Parish, Morgan Wiederhold, Ashley Rodriguez, and Kelly Neuner make a formal demand for a jury trial in this matter.

Respectfully submitted,

**SPURLOCK & ASSOCIATES, P.C.**

*/s/ Kimberley M. Spurlock*
Kimberley M. Spurlock
Texas Bar No. 24032582
Southern District Bar No. 30807
kspurlock@spurlocklaw.com
Misty Hataway-Coné
Texas Bar No. 24032277
Southern District Bar No. 34441
mcone@spurlocklaw.com
17280 West Lake Houston Pkwy.
Humble, Texas 77346
Tel. (281) 548-0900
Fax. (281) 446-6553

**ALLRED, MAROKO & GOLDBERG**

*/s/ Gloria M. Allred*
Gloria M. Allred  *Pro Hac Pending*
California Bar No. 65033
Nathan Goldberg  *Pro Hac Pending*
California Bar No. 61292
6300 Wilshire Boulevard, Ste. 1500
Los Angeles, California 99048
Tel. (323) 302-4774
Fax. (323) 653-1660

**ATTORNEYS FOR PLAINTIFFS**